**Michael HALE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 43A05–0611–CR–647.

Court of Appeals of Indiana.

Oct. 30, 2007.

Transfer Denied Jan. 3, 2008.

Mark Small, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Michael Hale ("Hale") appeals his conviction for dealing in cocaine as a Class A felony and his fifty-year sentence. Specifically, he argues that the trial court erred in denying his motion for mistrial, the evidence is insufficient to support his conviction, and his sentence is inappropriate. Concluding that the trial court did not abuse its discretion in denying Hale's motion for mistrial, the evidence is sufficient to prove that he knowingly or intentionally delivered cocaine in an amount weighing three grams or more, and Hale's sentence is not inappropriate in light of the nature of the offense and his character, we affirm the trial court.

### Facts and Procedural History

The facts most favorable to the verdict reveal that on March 9, 2006, members of the Kosciusko County Drug Task Force raided the Warsaw, Indiana, apartment of Lance Patrick ("Patrick") and Josh Hamilton ("Hamilton"), where they found cocaine. Thereafter, members of the Drug Task Force asked Patrick and Hamilton if they wanted to act as confidential informants in exchange for having their charges reduced or even dropped, and the pair agreed to do so. In order to receive such lenient treatment, Patrick and Hamilton were required to "inform on" four to

five people apiece.[1] Tr. p. 90.

On March 19, 2006, Patrick, Hamilton, and Hale were at the house of Amanda Mullins ("Mullins"), a mutual friend. The group later went to a bar. Through conversations with Hale, Patrick and Hamilton learned that they would be able to purchase cocaine from him.

On March 20, Hamilton called Officer Mike Spiegle with the Drug Task Force and said that he could set up a drug transaction with Hale, and Officer Spiegle told Hamilton to arrange the purchase. Hamilton later called Hale to confirm that Hale had cocaine. Hamilton then contacted Officer Spiegle again and told him that they would be able to purchase four eight balls [2] of cocaine from Hale.

In the meantime, Hale called Mullins and said that he was "freaked out" because Patrick and Hamilton called him wanting to do a deal. *Id.* at 168. According to Mullins, she told Hale the day before that Patrick and Hamilton were informants. Hale asked Mullins to come over to his house to stop the deal from going forward.

At about the same time, Officer Spiegle and Officer Joe Mooney, who was also with the Drug Task Force, met Patrick and Hamilton at the boat ramp at Center Lake. The officers searched Patrick and Hamilton as well as the car they were driving. They then gave Hamilton $240.00 in buy money in order to purchase two eight balls of cocaine from Hale and placed a transmitter and recording device on him. Patrick and Hamilton drove to the house where Hale lived with his grandparents, and Officers Spiegle and Mooney followed

them there. Officers Spiegle and Mooney listened via the transmitter on Hamilton to the events as they occurred, while Officer Joe Stanley with the Drug Task Force conducted surveillance of the house using binoculars. Hamilton walked up to the back porch of Hale's house and knocked on the door. When Hale came to the door, he said that he was going to search Hamilton. After patting down Hamilton, Hale stated that he did not trust Hamilton and wanted to deal with Patrick. Hamilton returned to the car, told Patrick what Hale had said, and gave Patrick the buy money. Patrick, who was not equipped with a recording device or transmitter, then went inside the house while Hamilton waited on the back porch. Hale and Patrick proceeded to Hale's bedroom, where Patrick purchased two eight balls of cocaine from Hale. After about five minutes, Hale and Patrick came back outside, and Hale apologized to Hamilton for searching him before. At about the same time, Mullins arrived at Hale's house. After a brief conversation, Patrick and Hamilton returned to their car, where Patrick gave the cocaine to Hamilton, and left.

Patrick and Hamilton then drove behind Lakeview Middle School, where they met back up with Officers Spiegle and Mooney. Hamilton gave the cocaine to Officer Spiegle, and, after the officers searched Patrick and Hamilton again, they were released.

Hale was arrested the next day, March 21.[3] On that same day, the State charged him with Dealing in Cocaine as a Class A felony.[4] In May 2006, while incarcerated

---

1. In fact, when Patrick and Hamilton later failed to meet their end of the bargain, they were arrested for and charged with dealing in cocaine. These charges were pending at the time of Hale's trial.

2. An eight ball is one-eighth of an ounce.

3. Because Hale was not arrested until the next day, the buy money was not recovered. The officers did not expect to recover the buy money.

4. Ind.Code § 35–48–4–1. The State also charged Hale with being a habitual offender but later dismissed that charge.

at the Kosciusko County Jail awaiting trial on this charge, Hale called Patrick and tried to discourage Patrick from testifying against him at trial. This conversation was recorded and later presented to the jury at trial. *See id.* at 153; Ex. 8, 9.

Hale's jury trial was held in July 2006, and both Patrick and Hamilton testified against Hale at trial. During Hamilton's testimony, the prosecutor asked him why Hale wanted to search him before proceeding with the deal, and Hamilton responded, "He didn't trust me so I had to go get [Patrick]." Tr. p. 119. The prosecutor followed up by asking, "What did he say to you that made you believe he didn't trust you?" *Id.* Hamilton replied, "Because he told me that his best friend wore a wire on him before." *Id.* Defense counsel immediately objected, and the trial court struck Hamilton's response from the record. *Id.* Later during Hamilton's testimony, the prosecutor asked him whether he had been threatened about his testimony at trial. Hamilton said yes and explained that Dustin Slone, who was sitting in the courtroom, called him that very morning and instructed him not to testify at trial or else he would "whip [his] a\* \*." *Id.* at 124. After direct, cross, redirect, and recross of Hamilton was completed, the trial court, outside the presence of the jury, asked a police officer to "escort Mr. Slone to a safe place pending the filing of formal charges...." *Id.* at 136. The court explained:

> We have evidence in open Court that the previous witness was intimidated and threatened by a person in the Courtroom. I'm not gonna have that. That does not do Mr. Hale justice and it certainly doesn't do the witness justice, and I simply am not going to have that in this Court. So, whether or not Mr. Slone did or didn't do those charges, there's testimony, under oath, that he did threaten the witness and that, in my

estimation, forms the basis for possible charges of intimidation and that is not appropriate.

*Id.* At this point, defense counsel moved for a mistrial due to the "testimony of Mr. Hamilton, indicating he'd been threatened." *Id.* at 137. Defense counsel explained:

> We had no advance notice of that or any knowledge of it. No opportunity to interview the gentlem[a]n that allegedly made the threat to see whether there's any basis to that, and I think it was very prejudicial for the Jury to hear that and I don't know how that could be corrected. Also, during his testimony Mr. Hamilton alluded to [Hale] having been, I don't remember his exact words, but having been, I'll say, busted before or having someone wear [a wire on him].... For those reasons I ask for a mistrial. I just don't think they had [sic] any admonition or caution to the Jury can cure those things.

*Id.* at 137–38. As for Hamilton's testimony that Hale told him his best friend had worn a wire in the past, the State responded that it did not intentionally elicit that response from Hamilton and, in fact, did not expect such an answer. The trial court denied the motion for mistrial on this ground, stating, "First of all, to the extent the Jury picked up on it, I think it would be a harmless error, and secondly, my involvement in this case today, I didn't even pick up on it, so someone who sort of knew a little bit about what was going on missed that." *Id.* at 138–39. As for Hamilton's testimony that Slone had threatened him that morning, the State responded:

> [Hamilton] was very reluctant to come in here and I think it's relevant if he's being threatened, and he's obviously, the record would show that Dustin Slone was sitting by Michael Hale, they were

conversing during the breaks, and that the Defendant has a representative here in Court to intimidate a witness, I think the Jury ought to know about that.

*Id.* at 139. Defense counsel interjected that there was no evidence connecting Hale to Slone's threat to Hamilton. The trial court denied the motion for mistrial on this ground, stating:

> I concur with [defense counsel that] there isn't any evidence that Mr. Hale had anything to do with what Mr. Slone may or may not have done, so I don't think that there's any indication that Mr. Hale had anything to do with the threat. My only concern was one out of caution and concern for the witness and anything relating to the threat I think was dealt with outside the presence of the Jury. I don't believe that's prejudicial and accordingly deny the motion for mistrial on that basis.

*Id.* at 139–40. Following trial, the jury found Hale guilty as charged. Finding two aggravators—Hale's extensive criminal history and the fact that he was on parole at the time of the instant offense—and no mitigators, the trial court sentenced him to fifty years. Hale now appeals.

### Discussion and Decision

Hale raises three issues on appeal. First, he contends that the trial court erred in denying his motion for mistrial. Second, he contends that the evidence is insufficient to support his conviction for dealing in cocaine as a Class A felony. Third, he contends that his sentence is inappropriate.

### I. Mistrial

■ Hale contends that the trial court erred in denying his motion for mistrial.

"On appeal, the trial judge's discretion in determining whether to grant a mistrial is afforded great deference because the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury." *McManus v. State*, 814 N.E.2d 253, 260 (Ind.2004), *reh'g denied.* We therefore review the trial judge's decision solely for abuse of discretion. *Id.* "After all, a mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation." *Id.* (quotation omitted). To succeed on appeal from the denial of a motion for mistrial, a defendant must demonstrate that the conduct complained of was both error and had a probable persuasive effect on the jury's decision. *Booher v. State*, 773 N.E.2d 814, 820 (Ind. 2002).

■ Hale moved for mistrial on two grounds. We first address Hale's motion for mistrial regarding Hamilton's testimony that Hale told him his best friend had worn a wire in the past, which Hale argues implies that he was previously involved in drug activity.[5] As detailed above, when the prosecutor asked Hamilton why he thought Hale did not trust him, Hamilton responded, "Because [Hale] told me that his best friend wore a wire on him before." Tr. p. 118. Defense counsel immediately objected, and the trial court struck Hamilton's response from the record.

On appeal, Hale makes no argument as to how the trial court's action in striking Hamilton's response from the record was insufficient to rectify the situation, especially given the fleeting nature of Hamilton's comment. Indeed, in denying Hale's motion for mistrial on this ground, the trial court commented that Hamilton's testimony regarding Hale's comment that his best

---

**5.** Indeed, there was a motion in limine in effect that prevented the State from introduc-ing evidence of Hale's prior arrests and convictions.

friend had worn a wire before was hard to "pick up on." *Id.* at 139. Because a mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation and Hale has failed to make an argument that the trial court's action was insufficient in this regard, Hale has not shown that he was placed in a position of grave peril. *See Francis v. State,* 758 N.E.2d 528, 532 (Ind.2001) (holding that the trial court properly denied the defendant's motion for mistrial where the trial court struck the improper testimony from the record and admonished the jury not to consider it). The trial court did not abuse its discretion in denying Hale's motion for mistrial on this ground.

■ We next address Hale's motion for mistrial regarding Hamilton's testimony that Slone threatened him on the morning of trial. During direct examination, Hamilton testified that Slone "called me this morning and told me not to testify, and if I did he would be waiting for me and whip my a\* \*." Tr. p. 124. Defense counsel did not object at this time. Defense counsel then began cross-examining Hamilton. Near the end of the cross-examination, counsel inquired about Slone's threat. *See id.* at 131. Specifically, defense counsel asked Hamilton if a girl he had previously set up was Slone's girlfriend, and Hamilton responded yes. *Id.* During redirect of Hamilton, the State asked Hamilton to point out Slone in the courtroom. Defense counsel did not object at this time either. Defense counsel then conducted a brief recross of Hamilton, during which he did not inquire about Slone's threat. At the conclusion of Hamilton's testimony, the trial court excused the jury and asked a police officer to escort Slone "to a safe place pending the filing of formal charges...." *Id.* at 136. After a ten-minute recess and still outside the pres-

ence of the jury, defense counsel finally moved for mistrial "on the basis of the testimony of Mr. Hamilton, indicating he'd been threatened." *Id.* at 137.

■ Hale did not object to Hamilton's testimony regarding Slone's threat and thereby did not give the trial court a chance to rule on the admissibility of such evidence at trial, and Hale's motion for mistrial came *after* Hamilton's testimony was completed. Moreover, defense counsel cross-examined Hamilton on the very issue he now contends should have resulted in a mistrial. Hale has waived this issue for review. *See Fleener v. State,* 648 N.E.2d 652, 660–61 (Ind.Ct.App.1995) (concluding that the defendant waived any error regarding the trial court's denial of his motion for mistrial because the motion was untimely, coming the day after the alleged misconduct occurred), *summarily aff'd on this issue by* 656 N.E.2d 1140 (Ind.1995). Waiver notwithstanding and even assuming Hamilton's testimony regarding Slone's threat was inadmissible because the State failed to connect Hale to that threat, Hale was not placed in grave peril. That is, defense counsel himself asked Hamilton if he had previously set up Slone's girlfriend, thereby permitting an inference that Slone's threat to Hamilton was not directly related to Hale but rather was related to the fact that Hamilton was an informant. In addition, there is convincing evidence of Hale's guilt. That is, evidence was presented to the jury that this was a controlled buy supervised by the Drug Task Force and that Hale called Patrick from jail and discouraged Patrick from testifying against him at trial. Hale has not shown that Hamilton's testimony that Slone threatened him had a probable persuasive effect on the jury's decision. The trial court did not abuse its discretion in denying Hale's motion for mistrial on this ground either.

## II. Sufficiency of the Evidence

 Hale next contends that the evidence is insufficient to support his conviction for dealing in cocaine as a Class A felony. "When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict." *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007) (quotation omitted). It is the role of the fact-finder, and not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* "To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling." *Id.* (quotation omitted). "Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* at 146–47 (quotation omitted). "It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence." *Id.* at 147 (quotation omitted). "[T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.* (quotation omitted).

 In order to convict Hale of dealing in cocaine as a Class A felony as charged in this case, the State was required to prove that he knowingly or intentionally delivered cocaine in an amount weighing three grams or more. Ind.Code § 35–48–4–1. The evidence presented at trial establishes that during a controlled buy supervised by the Drug Task Force, Patrick, who had been searched by the officers and given buy money, gave Hale $240.00 and Hale gave him over four grams of cocaine in return. In addition, evidence was presented that Hale called Patrick from jail and discouraged Patrick from testifying against him at trial. Nevertheless, Hale makes several arguments on appeal regarding why he believes the evidence is insufficient to support his conviction. However, all of these arguments require us to assess witness credibility and weigh the evidence, which we cannot do. For example, Hale points to Mullins' trial testimony that Patrick and Hamilton may have planted the cocaine at Hale's house and that they later joked about setting up Hale, that the officers were not able to see what transpired inside Hale's house during the buy and that Patrick was the only other person present during the buy, that Patrick and Hamilton had incentive to set up Hale so that they could get their own cocaine charges reduced or even dismissed, and that the buy money was never recovered. However, all of these arguments were presented to and ultimately rejected by the jury. Accordingly, the evidence is sufficient to support Hale's conviction for dealing in cocaine as a Class A felony.

## III. Inappropriate Sentence

 Last, Hale contends that his sentence is inappropriate. Indiana Appellate Rule 7(B) provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Purvis v. State*, 829 N.E.2d 572, 587 (Ind.Ct.App.2005) (internal citations omitted), *trans. denied, cert. denied*, 547 U.S. 1026, 126 S.Ct. 1580, 164 L.Ed.2d 310 (2006). The burden is on the defendant to

persuade us that his sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006). After due consideration of the trial court's decision, we cannot say that Hale's sentence is inappropriate.

The nature of the offense is not especially troubling, in that Hale sold over four grams of cocaine to an acquaintance during a controlled buy. However, Hale's character is another story. According to the trial court, Hale had "26 misdemeanor cases that have been processed through the Kosciusko Circuit Courts. Many of those cases, and I'll not detail them individually, but many of them dealt with substance abuse issues." Tr. p. 301. The court noted that in that same period of time, Hale was "cited for ... four felonies." *Id.* Most troubling is that the same trial judge sentenced Hale in 2001 for dealing in cocaine and Hale was on parole for that conviction for just sixty-one days when he sold the cocaine to Patrick on March 20, 2006. After being imprisoned for dealing in cocaine and then placed on parole, Hale promptly returned to a life of drug dealing. As such, Hale has failed to persuade us that his fifty-year sentence is inappropriate.

Affirmed.

BAKER, C.J., and BAILEY, J., concur.