Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 19 2014, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BROOKE N. RUSSELL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM HODAPP, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 07A01-1307-CR-342 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BROWN CIRCUIT COURT
The Honorable Judith A. Stewart, Judge
Cause No. 07C01-1103-FB-78

**May 19, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

William Hodapp, Jr. ("Hodapp") was convicted in Brown Circuit Court of Class B felony incest, Class C felony incest, Class D felony possession of child pornography, and Class A misdemeanor battery. Hodapp appeals and presents three issues, which we restate as:

I.      Whether the trial court abused its discretion in denying Hodapp's motion for mistrial and motion to set aside the verdict based upon allegations of juror misconduct;

II.     Whether certain comments by the prosecuting attorney constituted prosecutorial misconduct rising to the level of fundamental error; and

III.    Whether the State presented evidence sufficient to convict Hodapp of Class B felony incest.

We affirm.

**Facts and Procedural History**

Hodapp had a daughter, C.H., who was born in March 1994. When C.H. was ten years old, she reported to officials at her school that her father had made her touch his penis. The school officials reported this to the authorities, and C.H. was removed from Hodapp's home for eight months. Eventually, however, C.H. was returned to her father's home, and no criminal charges were apparently filed at that time.

Then, in the winter of 2008–2009, Hodapp showed C.H. his penis and asked her to "play" with it. Tr. p. 238. Hodapp took C.H.'s hand and placed it on his penis and made her manipulate his penis. He also put his fingers into C.H.'s vagina. C.H. testified that this occurred "multiple times." Tr. p. 258. These incidents quickly escalated to the point that Hodapp began engaging in sexual intercourse with his daughter. C.H. testified regarding several specific incidents of sexual intercourse. One incident occurred around

2

Halloween, after Hodapp had purchased a large amount of mulch. Hodapp had sexual intercourse with C.H. on a pile of this mulch. Shortly thereafter, C.H. had purchased a Marilyn Monroe costume for Halloween, and Hodapp had sexual intercourse with C.H. while she wore the costume. During another incident, Hodapp and C.H. slept outside to watch a meteor shower. Hodapp zipped their two sleeping bags together and had sexual intercourse with C.H. On another occasion, Hodapp had sexual intercourse with C.H. on the floor of her bedroom.

Hodapp paid C.H. twenty dollars for each of these incidents of sexual intercourse. Hodapp told C.H. that he was "teach[ing] [her] to be better" at sex and that no one would believe her if she told someone about the incest. Tr. p. 243. Hodapp also took nude pictures of C.H., and C.H. took nude pictures of herself. C.H. sent some of the pictures she had taken of herself to two of her boyfriends. These pictures were later found on computers and computer drives used by Hodapp.

The last time Hodapp had sexual intercourse with C.H. was in May of 2010, but when Hodapp approached C.H. for sex on May 23, 2010, she refused. Hodapp threatened to take away certain of C.H.'s privileges and warned her that he would not pay her. An argument ensued during which Hodapp hit C.H. in the face, threw her to the ground, and slammed her head into the floor. This caused injuries to C.H.'s face and leg. C.H. informed a friend of what had happened and reported the physical and sexual abuse to a counselor at her school the following Monday.

The State initially charged Hodapp with Class A misdemeanor battery. On March 11, 2011, after a police investigation, the State additionally charged Hodapp in another

cause with three counts of Class B felony incest with a person less than sixteen years of age, one count of Class C felony incest, and one count of Class D felony possession of child pornography. The court later consolidated these causes, and the case proceeded to trial on May 29–30, 2013. At the conclusion of the trial, the jury found Hodapp guilty as charged. Hodapp subsequently filed a motion to correct error, motion to set aside the verdict, and motion for mistrial, claiming that one of the jurors had committed misconduct and that the prosecutor had committed prosecutorial misconduct. The trial court denied these motions, and on July 15, 2013, sentenced Hodapp to ten years on each of the Class B felony incest convictions, two years on the Class D felony possession of child pornography conviction, and one year on the Class A misdemeanor battery conviction. The trial court ordered all of these sentences to be served concurrently. The trial court also imposed a five-year sentence on the Class C felony incest conviction, to be served consecutively to the other sentences, for an aggregate term of fifteen years. Hodapp now appeals. Additional facts will be provided as necessary.

## I. Juror Misconduct

Hodapp first claims that the trial court erred in denying his motion to set aside the verdict and motion for a mistrial based on alleged juror misconduct. The alleged misconduct at issue involves the juror referred to by the parties as Juror No. 2. During *voir dire*, Juror No. 2 made no response when the jury panel was asked if any of the jurors had seen or heard about the case or had any personal knowledge about the case. At trial, Hodapp's wife, and C.H.'s stepmother, Kim Hodapp ("Kim") testified on behalf of her husband. After Kim's testimony, Juror No. 2 told the bailiff that she recognized Kim

4

and "knew who she was [and] knew . . . her mom, [but] she didn't really know her except by sight." Tr. p. 458. The trial court then brought Juror No. 2 into the courtroom for questioning. Juror No. 2 explained that "probably thirty or forty years ago, I went to church with [Kim's] mother." Id. at 459. When asked if this would impact her ability to "determine [Kim's] truthfulness and credibility," Juror No. 2 stated, "No," and indicated she would treat Kim just like she would any other witness. Further questioning by the parties revealed that Juror No. 2 knew Kim by her maiden name and that she "seen [sic] her growing up some, but as far as being personally involved with her, nothing like that." Id. at 460. Hodapp made no objection to Juror No. 2 continuing to serve as a juror at that time.

Twenty-nine days after the jury returned its verdict, but before he had been sentenced, Hodapp filed a combined motion to correct error, motion to set aside the jury's verdict, and motion for mistrial, claiming in part that Juror No. 2 engaged in misconduct. In support of this motion, Hodapp submitted an affidavit in which Kim averred that she had known Juror No. 2 since 1975, that Juror No. 2 was a "close friend and confidante" of Kim's mother, that she had often been in Juror No. 2's home, and that Juror No. 2 had often been in her mother's home. The affidavit also stated that Kim knew Juror No. 2's children and that Juror No. 2 would have been aware that Kim had a "falling out" with Kim's mother after Kim moved in with Hodapp prior to her marriage with Hodapp. Appellant's App. pp. 42-43. At a hearing on Hodapp's motions on July 1, Kim testified that she had known Juror No. 2 since she was eight or nine years old and had been to Juror No. 2's house "a few times." Tr. p. 540. Kim explained that she believed her

5

mother had confided with Juror No. 2 and that Juror No. 2 would therefore be aware of "negative things" going on in Kim's family, but Kim admitted that she was not privy to any conversations between her mother and Juror No. 2. Tr. pp. 540-41. Kim also testified that she had seen Juror No. 2 at a funeral and discussed her family issues "in passing." Tr. p. 541. After hearing the parties' arguments, the trial court denied Hodapp's post-verdict motions, an action which Hodapp now claims was erroneous.

A trial court's discretion in determining whether to grant a mistrial is afforded great deference, because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. Mickens v. State, 742 N.E.2d 927, 929 (Ind. 2001). A court on appeal therefore reviews the trial court's decision solely for abuse of discretion. Id. "After all, a mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation." Id. To prevail on appeal from the denial of a motion for mistrial, a defendant must establish that the questioned conduct was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. Id. The gravity of the peril is determined by considering the alleged misconduct's probable persuasive effect on the jury's decision, not the impropriety of the conduct. Id.

With regard to juror misconduct, the failure of a juror to disclose a relationship to one of the parties may, in certain circumstances, entitle a party to a new trial. Roberts v. State, 894 N.E.2d 1018, 1022 (Ind. Ct. App. 2008) (citing Stephenson v. State, 864 N.E.2d 1022, 1055 (Ind. 2007). But in order to obtain a new trial based on a claim of juror misconduct, the defendant must demonstrate that the misconduct was both gross

6

and likely harmed the defendant. Id. It is the defendant's burden to present specific and substantial evidence establishing that a juror was possibly biased. Id. Like the related question of whether to grant a mistrial, the issue of juror misconduct is a matter within the trial court's discretion. Id. (citing Lopez v. State, 527 N.E.2d 1119, 1130 (Ind. 1988)).

We first question the timeliness of Hodapp's motion. Hodapp was made aware of Juror No. 2's familiarity with Kim's family during the trial, yet he made no motion for a mistrial or other objection to Juror No. 2 continuing to serve as a juror. In fact, after Juror No. 2 had answered the court's and the parties' questions, the trial court asked counsel for both parties if they needed to make "any record." Tr. p. 461. Hodapp's counsel specifically stated, "No" and rested his case-in-chief. Under these facts and circumstances, we conclude that Hodapp failed to preserve the issue of whether the trial court should have granted a mistrial. See Hale v. State, 875 N.E.2d 438, 444 (Ind. Ct. App. 2007) (concluding that defendant's motion for mistrial was untimely, and issue on appeal had been waived, where defendant did not move for mistrial until *after* admission of allegedly improper evidence); Fleener v. State, 648 N.E.2d 652, 660–61 (Ind. Ct. App. 1995) (concluding that the defendant waived issue of whether trial court's erred in denying his motion for mistrial because the motion was untimely, coming the day after the alleged misconduct occurred), *summarily aff'd in relevant part*, 656 N.E.2d 1140 (Ind. 1995).

Setting aside any questions about the timeliness of Hodapp's motion for mistrial, we cannot say that the trial court abused its discretion in denying Hodapp's motion. The trial court was faced with two conflicting accounts regarding the closeness of the

7

relationship between Juror No. 2, Kim, and Kim's mother. Kim claimed that the relationship was closer than Juror No. 2 had indicated during her questioning. The trial court obviously gave Kim's testimony and affidavit little credit, and we are in no position to second-guess this credibility determination. See Roberts, 894 N.E.2d at 1022 (concluding that defendant had not established alleged misconduct when juror's affidavit directly conflicted with testimony of defendant and his father indicating a close relationship between juror and defendant's mother). Accordingly, we are unable to agree with Hodapp that the trial court abused its discretion in denying Hodapp's post-trial motions alleging juror misconduct.

## II. Prosecutorial Misconduct

Hodapp also claims that the prosecuting attorney committed misconduct during the State's opening and closing statements. To preserve a claim of prosecutorial misconduct, a defendant must both make a contemporaneous objection and request an admonishment. Shelby v. State, 986 N.E.2d 345, 363 (Ind. Ct. App. 2013), trans. denied. If the objecting party is not satisfied with the admonishment, the proper procedure is to move for a mistrial. Id. Failure to request an admonishment or move for a mistrial results in waiver of the issue on appeal. Id. Where a claim of prosecutorial misconduct has been properly preserved, the reviewing court must determine: (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. Id. (citing Coleman v. State, 946 N.E.2d 1160, 1166 (Ind. 2011)).

Here, however, Hodapp made no objections to the comments by the prosecuting attorney that he now claims constituted misconduct. As such, he has failed to preserve his claim for appeal. See id. Where, as here, a claim of prosecutorial misconduct has not been properly preserved, the defendant must establish not only the grounds for the misconduct, but also the additional grounds of fundamental error. Id. The fundamental error exception to the waiver rule is an extremely narrow one. Id. at 364. To rise to the level of fundamental error, the error complained of must be so prejudicial to the rights of the defendant as to make a fair trial impossible. Id. Specifically, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. Id. As our supreme court quite recently explained, "[a] 'finding of fundamental error essentially means that the trial judge erred . . . by not acting when he or she should have,' even without being spurred to action by a timely objection." Brewington v. State, No. 15S01-1405-CR-309, slip op. at 29 (Ind. May 1, 2014) (quoting Whiting v. State, 969 N.E.2d 24, 34 (Ind. 2012)). We will examine each of Hodapp's claims with this standard in mind.

*A. Statements Regarding Facts Not in Evidence*

Hodapp first complains that the prosecuting attorney made claims that were not supported by the evidence. He specifically complains about the following portions of the State's opening statement: "In 2004, [C.H.] had disclosed that Bill Hodapp was touching her," and "It was her freshman year when he started touching her . . . when she . . . when he started touching her again." Tr. p. 205.

9

These statements are in apparent reference to C.H.'s report in 2004 that Hodapp had made her touch his penis. It does not appear that Hodapp complains that this was improper because it referred to the uncharged 2004 misconduct. Indeed, a review of the trial transcript reveals that part of Hodapp's trial strategy was to refer to this earlier allegation, which was apparently determined to be unsubstantiated, and argue that C.H.'s current claims were similarly unworthy of credit. On appeal, Hodapp claims that the prosecutor's reference to the 2004 incident was improper because it mischaracterized the evidence because it refers to Hodapp touching C.H. as opposed to C.H. touching him.

During its opening statement, the State may relate to the jury what it *expects* the evidence to be. Ind. Code § 35-37-2-2(1); Splunge v. State, 526 N.E.2d 977, 981 (Ind. 1988); Tacy v. State, 452 N.E.2d 977, 981 (Ind. 1983). That the State failed to provide any evidence that Hodapp improperly touched C.H., as opposed to C.H. touching Hodapp, in 2004 does not mean that the prosecuting attorney's reference to this during the State's opening statement constituted fundamental error. Indeed, it is black-letter law that statements by attorneys, including opening statements, are not evidence, Bradford v. State, 675 N.E.2d 296, 301 (Ind. 1996), and the jury in this case was so instructed. Tr. pp. 204, 514.

Hodapp also complains about statements made during the State's closing arguments, which included: "I want you to think about a 10 year old girl, who tells the authorities that she's been touched by her father." Tr. p. 499. Again, Hodapp claims that this mischaracterizes the evidence because the only evidence admitted at trial regarding the 2004 allegations were that Hodapp made C.H. touch him, not that he touched her.

10

Regardless of whether Hodapp touched C.H or or forced C.H. to touch him in 2004, the fact remained that there was an unsubstantiated allegation of improper sexual contact in 2004. We are unable to say that this minor mischaracterization of the 2004 event arose to the level of fundamental error.

Another comment by the prosecuting attorney during the State's closing argument was with reference to one of C.H.'s boyfriends: "About the time they started dating, . . . I think he said within a month, she said about six months, she starts talking about this 40 year old secret. And about this time . . . all around the same time that the defendant begins having sex with her again." Tr. p. 473. It is unclear precisely which conduct this refers to, but we reject Hodapp's suggestion that this reference to his having sex with C.H. "again" must refer to the 2004 incident or some other uncharged conduct. Given the repeated nature of Hodapp's reprehensible behavior towards C.H., it is at best unclear as to what the prosecuting attorney was referring to in this statement, but we cannot say that this reference to Hodapp having sex with C.H. "again" rises to the level of fundamental error.

*B. Inflaming the Passions and Prejudices of the Jury*

It is well established that it is improper for a prosecutor to request the jury to convict a defendant for any reason other than his guilt or to phrase final argument in a manner calculated to inflame the passions or prejudice of the jury. Neville v. State, 976 N.E.2d 1252, 1264 (Ind. Ct. App. 2012), trans. denied. Hodapp claims that the prosecutor committed such misconduct during the State's closing argument.

11

C.H. testified that Hodapp told her that, by having sexual intercourse with her, he was doing her a favor by teaching and educating her about how to have sex. Hodapp testified that he taught his daughter about photography, but not about how to take pornographic pictures. In reference to this evidence, the prosecuting attorney stated during closing argument, "And you heard the kind of eery [sic] testimony from the defendant about how we don't teach that. We don't teach pornography. Eerily similar to what she says comes out of his mouth when he's raping her and molesting her." Tr. p. 473. Hodapp claims used the terms "rape" and "molest" to inflame the passions and prejudices of the jury because Hodapp was not charged with rape or child molesting.

In addressing this argument, we again emphasize that Hodapp failed to object to these statements at trial. Had he done so, the trial court might well have sustained his objection. But he did not object, and the question before us is not whether the prosecuting attorney should have used the terms "rape" or "molesting." Clearly, he should not. The question before us, however, is whether using these terms constituted a blatant violation of basic principles that denied the defendant fundamental due process. We conclude that it did not.

The term "rape" in Indiana criminal law is strictly limited to knowingly or intentionally having sexual intercourse with a member of the opposite sex when the other person is either compelled by force or the imminent threat of force, is unaware that the intercourse is occurring, or so mentally disabled or deficient that consent to intercourse cannot be given. Ind. Code § 35-42-4-1(a). This definition does not encompass rape of someone of the same sex or forcible, nonconsensual anal intercourse, or sex with

12

someone under a certain "age of consent," all of which are sometimes colloquially referred to as "rape." <u>See</u> Mirriam-Webster Online, http://www.merriam-webster.com/dictionary/rape, (defining "rape" as a noun as "unlawful sexual activity and usually sexual intercourse carried out forcibly or under threat of injury against the will usually of a female or with a person who is beneath a certain age or incapable of valid consent."); Oxford English Dictionary, OED Online, http://www.oed.com/view/Entry/ 158145?rskey=19Xp2F&result=3&isAdvanced=false#eid (defining "rape" to include "In later use more generally: the act of forced, non-consenting, or illegal sexual intercourse with another person; sexual violation or assault.").[1]

While we do not condone the prosecuting attorney's use of the word "rape," we cannot say it amounted to fundamental error. The jury was not encouraged to convict Hodapp of "rape"; it was instructed on the statutory definitions of the charged crimes of incest. And the jury was repeatedly instructed that the arguments of counsel were not evidence. Under these facts and circumstances, we cannot say that this reference to "rape" deprived Hodapp of fundamental due process.

We reach a similar conclusion with regard to the prosecuting attorney's use of the word "molest." Hodapp was not charged with child molesting, which involves sexual conduct with a child under the age of fourteen. <u>See</u> Ind. Code § 35-42-4-3. But the word "molest" has a much broader meaning. <u>See</u> Oxford English Dictionary, OED Online,

---

[1] In fact, during the trial, one of C.H.'s ex-boyfriends testified that he asked C.H., "is [Hodapp] raping you, and she said, yeah, he is." Tr. p. 214. Hodapp made no objection to this testimony, and on cross-examination of this witness, Hodapp's counsel even brought the subject up again, asking the witness "and you asked [C.H] if [Hodapp] was raping . . her." Tr. p. 219.

[2] Neither do we agree with Hodapp that the cumulative effect of the prosecuting attorney's statements constituted fundamental error.

[3] Hodapp also claims that the evidence is insufficient to support his conviction for Class B felony incest

http://www.oed.com/view/Entry/120866?rskey=XStFX1&result=3&isAdvanced=false (defining "molest" as a verb as "To harass, attack, or abuse sexually."). It was imprudent and improper for the prosecuting attorney to use this word to describe to the jury what happened to C.H. If Hodapp had objected, his objection should have been sustained. But Hodapp did not object, and the jury was not encouraged to convict Hodapp of child molesting. Instead, the jury was instructed on the charged crime of incest. And yet again, the jury was repeatedly instructed that the arguments of counsel were not evidence. Under these facts and circumstances, we cannot say that the prosecuting attorney's improper comments amounted to fundamental error.

Hodapp also complains of the prosecuting attorney's reference to the sexually-transmitted disease herpes. At trial, evidence was presented that Hodapp and his wife Kim have herpes. The defense elicited testimony from C.H. that she did not have herpes. The State also elicited testimony from C.H. that Hodapp always used a condom when he had sexual intercourse with her. The defense presented testimony that a condom was not a surefire means of preventing the transmission of herpes during sexual intercourse, thereby claiming that the fact that C.H. did not have herpes supported Hodapp's denial of having sexual intercourse with C.H. During its closing argument, the State referenced the issue of herpes in a manner that Hodapp now claims was improper. The portions of the prosecuting attorney's statement Hodapp complains about include:

> Now, much has been made about herpes today. And what you saw yesterday was I think one of the cruel things that can happen. (Inaudible) [C.H.] [wa]s up here telling the world about the abuse that she suffered. She gets down and leaves, and thinks she's done, and then she comes back. And all of a sudden, is asked, do you have herpes. And [C.H.]'s (inaudible),

14

she's going to probabl[y] go home and figure out what that question meant, and what that question means for this trial. And it's not enough for the defendant to have abused her body, attack her self worth, told her that nobody would believe her, but now . . as a parting shot, to leave her with the understanding that she's been now . . that she's been exposed to a life long illness. Something that she's going to share with her most intimate partners. And she didn't even know until yesterday. How horrifying for her. And you heard evidence that the defendant has herpes, that he passed it on to his wife, because they didn't use condoms, that he . . herpes is (inaudible) and easy to transmit when you have an outbreak, but that he has outbreaks that take up to about 10 days every couple months. [C.H.] told you that he was having sex with her every two weeks or so. Came out to be about (inaudible). And on cross examination, I suspect you heard this too, when asked the question, why did you buy condoms for [C.H.] , the answer was not because I didn't want her to get pregnant, the answer was because I didn't want her to get herpes. Because that's what he has and he didn't want to pass it along to his daughter! It would be evidence and it would damage her for life. And so he used a condom every single time. He wasn't concerned about what she was going to get from [her boyfriend] Rusty. He wasn't concerned about whether or not he was going to make her pregnant. He was concerned that she didn't get herpes! The very disease he carries, that he knows he can transmit to somebody else and so he's very careful to buy her condoms and use her condoms! And that's forefront on his mind, even when he's testifying here! I don't want her to get herpes! And who has got herpes? . . . .

Tr. pp. 475-76.

Hodapp now claims that this was improper because it implied that the defense surprised C.H. about herpes and because it mischaracterizes Hodapp's testimony. Hodapp argues that he had a constitutional right to cross-examine C.H., including about whether she had any sexually-transmitted diseases. He therefore argues that the State's statements regarding the cruelty of asking C.H. such questions penalized him for exercising this right. We first note that the State was referring not simply to the question of whether C.H. had herpes, but the manner in which she was asked this, i.e., after she

15

had been excused as a witness then re-called for this line of questioning. We cannot say that this line of questioning deprived Hodapp of fundamental due process.

But Hodapp also claims that the State mischaracterized the evidence by claiming that he had testified that he bought C.H. condoms because he did not want her to get herpes. Hodapp claims that his actual testimony was that he bought her condoms so that she would not get any sexually-transmitted disease. Importantly, the substance of Hodapp's testimony was somewhere in between these two characterizations. When asked why he bought C.H. condoms if he did not wish her to have sexual intercourse, Hodapp testified, "I bought her condoms because I've got herpes. I don't want her to get a str . . a sexually transmitted disease, like I got. The only way she's going to do that is if she knows how to stay protected." Tr. p. 428. Therefore, although the prosecuting attorney's statements weren't entirely accurate, they were not wholly inaccurate. Hodapp testified that he bought his daughter condoms because he had herpes and he did not want her to similarly get a sexually-transmitted disease. Under these facts and circumstances, we cannot say that this amounted to fundamental error.[2] Accordingly, we reject Hodapp's claims that the prosecuting attorney committed misconduct constituting fundamental error.

### III. Sufficiency of the Evidence

Lastly, Hodapp claims that the State presented insufficient evidence to convict him of incest as a Class B felony. When reviewing a claim that the evidence is insufficient to

---

[2] Neither do we agree with Hodapp that the cumulative effect of the prosecuting attorney's statements constituted fundamental error.

16

support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

Incest as a criminal offense is defined as follows:

A person eighteen (18) years of age or older who engages in sexual intercourse or deviate sexual conduct with another person, when the person knows that the other person is related to the person biologically as a parent, child, grandparent, grandchild, sibling, aunt, uncle, niece, or nephew, commits incest, a Class C felony. *However, the offense is a Class B felony if the other person is less than sixteen (16) years of age*.

Ind. Code § 35-46-1-3(a) (emphasis added). Hodapp claims that the State failed to prove that he had sexual intercourse with C.H. when she was under the age of sixteen. However, Hodapp admits that C.H. described several instances of sexual intercourse with her father, two of which occurred when she was fifteen years old. See Appellant's Br. p. 23. This evidence by itself is sufficient to support Hodapp's conviction for Class B felony incest.[3] See Bailey v. State, 979 N.E.2d 133, 135 (Ind. 2012) ("A conviction can

---

[3] Hodapp also claims that the evidence is insufficient to support his conviction for Class B felony incest because the State failed to prove precisely where he and C.H. were when he placed his fingers in her vagina. He claims that this means that there was insufficient evidence to find that the events occurred in Brown County. However, C.H. specifically testified that the sexual intercourse took place in Brown County, and he attacks only the sufficiency of the evidence on the conviction for Class B felony incest, which was based on sexual intercourse.

17

be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.").

## Conclusion

The trial court did not abuse its discretion when it denied Hodapp's motions for mistrial and to set aside the verdict based on alleged juror misconduct, as the trial court was under no obligation to credit the testimony and affidavit of Hodapp's wife. The prosecuting attorney made several statements that were improper, and had Hodapp objected, his objections should have been sustained. However, Hodapp did not object, and these improper statements by the prosecuting attorney did not constitute fundamental error. Lastly, the State presented sufficient evidence to convict Hodapp of Class B felony incest because his daughter testified that Hodapp had sexual intercourse with her when she was fifteen years old.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.