Gerald MICKENS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–0005–CR–325.

Supreme Court of Indiana.

Feb. 27, 2001.

Eric K. Koselke, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

The jury in appellant Gerald Mickens' trial reported back a unanimous verdict of guilty on both counts, murder and carrying a handgun without a license. As counsel polled the jury, however, one juror said she had been intimidated by another and

was unsure about voting to convict. The trial judge took extensive measures, described below, to deal with this development. We are satisfied that these measures were adequate and thus affirm the convictions.

## I. Pressure on a Juror

■ After deliberations, the jury announced to the trial court that it found Mickens guilty. Upon polling the jury, however, the court discovered that Juror # 12 still had some uncertainty in her mind about the verdict. The court instructed the jury to continue deliberations.

The same juror later informed the bailiff that a juror was threatening her and calling her names. The trial court conducted an inquiry of Juror # 12. Juror # 12 told the court: "The other black female in the jury has been very angry at me because I'm not deciding what their side is deciding and she's been calling me names. She's been saying I'm immature. And basically, putting me under a lot of duress." (R. at 334.) Upon questioning by the court, the juror indicated that she understood that how one decides to vote on a verdict is an individual decision and said she was "taking it very seriously." (R. at 335, 336.)

Then, at Juror # 12's request, the court replayed some testimony from the trial and instructed the jury to "maintain civility during deliberations." (R. at 336, 338–39.) After the testimony was replayed, another juror sent a note to the court stating that Juror # 12 was "not logical and not following the request of the Court." (R. at 344.) The bailiff told the court that Juror # 12 had said that "she wished to be taken off the Jury." (*Id.*)

The court conducted another inquiry of Juror # 12. Juror # 12 indicated that it was actually other jurors who wanted her off the panel, but that the jury's deliberations were now being conducted in a reasoned way and that she wished to continue serving. The judge instructed her to rejoin the other jurors and continue deliberations.

After further deliberations, the jury again found Mickens guilty on both the murder and handgun charges. The court polled the jurors individually, and each juror confirmed agreement with the verdict.

■ Mickens asserts that he was deprived of his Sixth Amendment right to a fair and impartial jury when the trial court denied his request for a mistrial based on juror misconduct during deliberations. On appeal, a trial judge's discretion in determining whether to grant a mistrial is afforded great deference, because the trial judge "is in the best position to gauge the surrounding circumstances of an event and its impact on the jury." *Gregory v. State,* 540 N.E.2d 585, 589 (Ind.1989). We therefore review the trial court's decision solely for abuse of discretion. *Rodriguez v. State,* 270 Ind. 613, 388 N.E.2d 493 (1979). After all, a mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation. *Szpyrka v. State,* 550 N.E.2d 316, 318 (Ind.1990)(citing *Lee v. State,* 531 N.E.2d 1165 (Ind.1988)).

■ To prevail on appeal from the denial of a motion for mistrial, the appellant must establish that the questioned conduct "was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected." *Gregory,* 540 N.E.2d at 589. The gravity of the peril is determined by considering the misconduct's probable persuasive effect on the jury's decision, not the impropriety of the conduct. *Id.*

The trial judge in this case proceeded in a thorough and thoughtful way, confronting an unusual set of circumstances. He conducted two separate inquiries of the beleaguered juror to confirm the importance of the verdict being an individual decision, admonished the jury to maintain civility during their deliberations, and polled the jurors independently after the verdicts were announced to verify that the result was truly an individual decision. The

affected juror assured the trial court that she understood how she voted was an individual decision, (R. at 335, 345–46), and she agreed with the jury's verdict, (R. at 349–50). Because the juror "did not indicate any hesitation or unwillingness to continue deliberating in this matter, and certainly, she knows that she doesn't have to go the route that the other Jurors do," the court denied Mickens' motion for mistrial. (R. at 340, 342.)

This approach focused on the right questions, similar to those at issue in a case in which two jurors received mysterious and possibly intimidating phone calls. *Rodriguez*, 270 Ind. at 616, 388 N.E.2d at 495. The jurors assured the court that the phone calls would not affect their decision in the case, and the court specifically admonished the jurors to not allow the calls to influence them during deliberations. We concluded that any prejudicial effect these calls might have had on the jury was cured by the court's inquiries and admonishments. *Id.*, 270 Ind. at 617, 388 N.E.2d at 496.

We reach the same conclusion in the case before us today. The road here was a little bumpy, but the trial judge was satisfied that the verdict represented the impartial and separate judgment of all the jurors. The court justifiably denied Mickens' motion for mistrial.

## II. The Evidence on Self Defense

■ Mickens also claims the State did not disprove his claim of self-defense. The facts most favorable to the verdict revealed that in late March 1999, sixteen-year-old Lanchester Whitlow (a.k.a."Butter") threatened to "beat up" eighteen-year-old Gerald Mickens ("Bolo") if Mickens refused to pay off his debt to Whitlow. (R. at 180, 183–84, 193.) On the night of March 30, 1999, Mickens escorted his fifteen-year-old girlfriend, Sherea Upshaw, northbound on College Avenue to her home. Meanwhile, Whitlow and his sixteen-year-old friend, Marcus Lewis, walked southbound and encountered the couple.

As the parties approached one another, no words were exchanged. Whitlow punched Mickens in the face once and Lewis struck him. Mickens then stepped back and drew a gun. Lewis had seen Mickens' hand in his pocket earlier, but did not think anything of it until Mickens drew the gun. Lewis ran from Mickens when he saw the gun; Whitlow remained motionless. After hearing a shot, Lewis turned around in time to see Mickens fire a second shot in the vicinity of where Whitlow lay. Whitlow died from gunshot wounds to the head and abdomen.

The State charged Mickens with knowingly killing another human being by shooting a deadly weapon. Mickens does not contest the adequacy of the proof on these elements, arguing instead that the State unsuccessfully rebutted his claim of self-defense.

■ In a homicide prosecution, a self-defense claim can prevail only if the defendant had a "reasonable fear of death or great bodily harm." *Brooks v. State,* 683 N.E.2d 574, 577 (Ind.1997). A defendant may use deadly force to repel an attack only if such force is reasonable and believed to be necessary. *Crisler v. State,* 509 N.E.2d 822 (Ind.1987). Indeed, "[t]he trier of fact is not precluded from finding that a defendant used unreasonable force simply because the victim was the initial aggressor." *Birdsong v. State,* 685 N.E.2d 42, 45 (Ind.1997) (citations omitted).

■ When a defendant asserts self-defense, the burden shifts to the State to disprove one of the elements of self-defense beyond a reasonable doubt. *Id.* "The State may carry its burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Lilly v. State,* 506 N.E.2d 23, 24 (Ind.1987).

Here, the evidence favorable to the verdict suggests that Whitlow and Lewis each punched Mickens once after approaching

him and his girlfriend. Neither of Mickens' assailants possessed guns at the time of the confrontation. Nevertheless, after being hit twice, Mickens backed away from the aggressors, drew a gun, and shot Whitlow two times. According to Lewis' testimony, Mickens shot Whitlow again after his first shot knocked the victim to the ground. (R. at 187.)

This was ample evidence from which a reasonable juror could conclude beyond a reasonable doubt that Mickens used excessive force and could not have entertained a good faith belief that he was in danger of death or great bodily harm. Accordingly, we will not disturb the jury's decision.

### III. A Double Jeopardy Claim

Mickens also argues that his convictions for murder and carrying a handgun without a license violate the Double Jeopardy Clause of the Indiana Constitution. We have held:

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999).

Mickens concedes that the two convictions do not violate the statutory elements test. (Appellant's Br. at 11.) He contends instead that the same evidence was used to convict him of both charges, thereby contravening the actual evidence test. Under this test, "the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." *Richardson*, 717 N.E.2d at 53. The defendant must demonstrate that there is a "reasonable, not speculative or remote," possibility that the fact-finder used the same evidentiary facts to establish the essential elements of both offenses. *Griffin v. State*, 717 N.E.2d 73, 89 (Ind.1999), *cert. denied*, 530 U.S. 1247, 120 S.Ct. 2697, 147

L.Ed.2d 968 (2000). Mickens has failed to meet this burden.

To prove the murder, the State demonstrated that Mickens caused Whitlow's death by shooting him two times with a handgun. It also showed that Mickens carried the gun as he approached Whitlow and Lewis. (R. at 185, 196, 201). Once the State proved that Mickens carried a handgun, the burden shifted to Mickens to provide proof that he possessed a valid license. *Washington v. State*, 517 N.E.2d 77 (Ind.1987). *See also* Ind.Code Ann. § 35–47–2–1 (West 1998). Mickens did not.

This claim resembles the one addressed in *Ho v. State*, 725 N.E.2d 988 (Ind.Ct. App.2000). There, the Court of Appeals confronted a double jeopardy claim arising from a defendant's convictions for robbery and carrying a handgun without a license. *Id.* at 992. Like Mickens, Ho did not present evidence that he had a license for the handgun that he used to commit robbery. The court concluded that "distinct evidentiary facts were used to prove that Ho committed robbery while armed with a handgun, while a lack of evidentiary facts was used to prove that Ho did not have a license to carry that handgun." *Ho*, 725 N.E.2d at 993. Consequently, the court held that Ho unsuccessfully demonstrated "a reasonable possibility that the same evidentiary facts may have been used to establish the essential elements of each challenged offense." *Id.*

This seems about right. Carrying the gun along the street was one crime and using it was another. The *Richardson* actual evidence test is not met, and we reject Mickens' double jeopardy claim.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.