## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 27 2015, 6:51 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Paula M. Sauer | Gregory F. Zoeller |
| Danville, Indiana | Attorney General of Indiana |
| | Brian Reitz |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph Singleton, | February 27, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 32A01-1407-CR-323 |
| v. | Appeal from the Hendricks Superior Court |
| State of Indiana, | The Honorable Karen M. Love, Judge |
| *Appellee-Plaintiff* | Cause No. 32D03-1305-FA-6 |

**Bailey, Judge.**

# Case Summary

[1] Joseph Singleton ("Singleton") appeals his convictions and thirty-eight-year aggregate sentence for Child Molesting, as a Class A felony,[1] and Attempted Child Molesting, as a Class C felony.[2] We affirm the convictions but revise the sentence to twenty years.

# Issues

[2] Singleton presents three issues for review:

I. Whether he was entitled to a mistrial after a witness testified that Singleton's wife was pregnant at the time of the crimes;

II. Whether his sentence is inappropriate; and

III. Whether Singleton was properly prohibited from contact with his infant son.

# Facts and Procedural History

[3] In 2012, thirty-two-year-old Singleton taught algebra at Plainfield Community Middle School. Thirteen-year-old M.M. was one of Singleton's students. Prior to the winter break, Singleton and M.M. began communicating via a photograph-sharing social networking website. They later agreed to

---

[1] Ind. Code § 35-42-4-3.

[2] Ind. Code §§ 35-42-4-3, 35-41-5-1.

communicate via texting, eventually sending thousands of texts to one another. M.M. frequently visited Singleton's classroom at lunch time, using hall passes that he had written for M.M. and her friends. M.M. would customarily leave her book bag in the classroom and Singleton would sometimes place snacks in it. The teacher and student also exchanged gifts.

[4] Singleton coached a math competition team, which M.M. joined. Practices were held twice-weekly and Singleton sometimes gave M.M. a ride home afterward. By April of 2013, Singleton and M.M. had professed love for each other. On April 5, 2013, Singleton kissed M.M. on her lips. The kisses continued for about three weeks, typically taking place in a darkened classroom. In late April, after a math competition practice, M.M. called her step-father to pick her up because she wasn't feeling well. She laid down on the classroom floor to wait for her ride, and Singleton laid down on the floor beside M.M. They kissed, Singleton unzipped M.M.'s pants, and Singleton placed his finger in M.M.'s vagina.

[5] During the early morning hours of May 1, 2013, M.M.'s mother noticed that M.M. had received a text message with the word "love" and a heart symbol in it. (Tr. 549.) She awakened M.M. and demanded an explanation. Eventually, M.M. provided her password and text messages from Singleton were discovered. M.M.'s parents contacted police.

[6] On May 2, 2013, Singleton was charged with Attempted Child Molestation for having kissed M.M. on her lips. On May 22, 2013, Singleton was charged with Child Molestation for having digitally penetrated M.M.'s vagina.

[7] On April 22, 2014, a jury convicted Singleton of both counts. On July 1, 2014, Singleton received a sentence of thirty-eight years imprisonment, with three years suspended to probation. As a condition of probation, Singleton was ordered to have no contact with any person under age eighteen. This appeal ensued.

# Discussion and Decision

## Mistrial

[8] Prior to trial, defense counsel requested that Singleton's statement to police be redacted to omit any reference to his wife's pregnancy; the request was granted. Counsel then sought clarification that his motion in limine "on the pregnancy issue" was granted. (Tr. 383.) The court indicated that the motion in limine was granted, subject to the defense not "opening the door." (Tr. 383.) The prosecutor responded that the State had no intention of making pregnancy an issue and further stated: "If it comes out it has not been elicited[.]" (Tr. 384.)

[9] M.M. was called as the State's first witness. After M.M. had testified at length, and described Singleton's conduct in detail, the prosecutor asked M.M. "how did all this come out." (Tr. 475.) The following exchange then took place:

Prosecutor: when she [your mother] asked you about it what did you tell her?

M.M.: I said don't get him in trouble. It's all my fault.

Prosecutor: Why did you say that?

M.M.: Because he had – his wife was pregnant and I didn't like for him to get in trouble because he had a family.

(Tr. 475-76.)

[10] Defense counsel interrupted and the jury was excused. Defense counsel then requested a mistrial. The prosecutor insisted that the reference to pregnancy was inadvertent but admitted that she had not advised M.M. to avoid such reference. The State did not specifically oppose the grant of a mistrial. However, the trial court opined that evidence of his wife's pregnancy was not so detrimental to Singleton as to require a mistrial. With Singleton's acquiescence, the trial court instructed the jury: "you are to disregard the witness's testimony that Mrs. Singleton may or may not have been pregnant." (Tr. 482.) Singleton now argues that the State interjected an evidentiary harpoon by deliberately eliciting testimony in violation of a motion in limine, and that he was therefore entitled to a mistrial. According to Singleton, the jury admonishment was inadequate to preserve his right to a fair trial.

[11] A decision to grant or deny a motion for a mistrial lies within the discretion of the trial court. *Randolph v. State*, 755 N.E.2d 572, 575 (Ind. 2001). On appeal, the trial court's exercise of discretion is afforded great deference. *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001). This is so because the trial judge is in the best position to gauge the surrounding circumstances of an event and its impact upon the jury. *Id.*

[12] A mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation. *Id.* To prevail on appeal from the denial of a motion for mistrial, the appellant must establish that the challenged conduct was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is determined by considering the misconduct's probable persuasive effect on the jury's decision, not the impropriety of the conduct. *Id.*

[13] Here, M.M. was asked why she believed the situation to be her fault. Although the question concerned M.M.'s state of mind, she replied unresponsively, instead focusing upon Singleton's family circumstances. This does not support a claim that the State deliberately elicited testimony proscribed by an order in limine.

[14] The trial court instructed the jury to disregard any evidence of a possible pregnancy. A contemporaneous admonition is presumed to have cured any error. *See Gamble v. State*, 831 N.E.2d 178, 184 (Ind. Ct. App. 2005), *trans. denied*. We also observe that Singleton did not renew the request for a mistrial after the admonition. *See Washington v. State*, 902 N.E.2d 280, 289-90 (Ind. Ct. App. 2009) (observing that if an admonishment is insufficient to cure the error, the defendant must request a mistrial), *trans. denied*. Singleton failed to show that M.M.'s isolated reference to a pregnancy – after her explicit testimony relating the details of the crimes – placed Singleton in a position of grave peril to which he should not have been subjected. The denial of a mistrial did not constitute an abuse of discretion.

# Sentence

[15] Upon conviction of a Class A felony,[3] Singleton was subject to a sentence of between twenty years and fifty years, with thirty years as the advisory term. I.C. § 35-50-2-4. Upon conviction of a Class C felony,[4] Singleton was subject to a sentence of between two years and eight years, with four years as the advisory term. I.C. § 35-50-2-6. Singleton's thirty-eight-year aggregate sentence is comprised of a thirty-eight-year sentence for the Class A felony and a concurrent five-year sentence for the Class C felony. Three years were suspended to probation. When imposing this sentence, the trial court found Singleton's violation of a position of trust and greater than typical harm to the victim to be aggravators.[5] In mitigation, the trial court recognized Singleton's lack of criminal history, military service, hardship to his dependents, his remorse, and the surrender of his teacher's license.

[16] The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature

---

[3] The offense is now a Level 1 felony.

[4] The offense is now a Level 5 felony.

[5] Because of publicity surrounding the case, M.M. received social media messages from other students blaming her for a teacher's incarceration.

of the offense and the character of the offender."  In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).  The principal role of such review is to attempt to leaven the outliers.  *Id.* at 1225.  A defendant "'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'"  *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

As to the nature of Singleton's offenses, he used his position as a teacher to gain access to M.M. during and after school hours.  He professed love for M.M., encouraged her to communicate with him, and persuaded her to join an academic competition team.  Singleton repeatedly kissed M.M.  Eventually, Singleton digitally penetrated M.M.'s vagina.  The two made plans to meet and have intercourse at a later time.

As to Singleton's character, he had historically been a productive citizen. Singleton had no criminal history; he had assisted his single mother in rearing his younger siblings; he had served in the military; he had been honored as a teacher of the year; he provided financial support for his family.  While incarcerated for these offenses, Singleton provided tutoring to other inmates.

Having reviewed the matter, we conclude that the thirty-eight year sentence is an outlier.  It is in excess of that sought by the State and that recommended by the probation department.  M.M.'s step-father was permitted to testify at some

length that his family had suffered because Singleton had withdrawn from a plea bargain. Thus, it appears that Singleton may have been penalized for exercising his Constitutional right to a trial by jury. We conclude that a sentence of twenty years for a Class A felony – with no portion suspended to probation – is appropriate. Therefore, because his sentence for the Class C felony is concurrent, Singleton's aggregate sentence is twenty years.

# No Contact Order

[20] At the conclusion of the sentencing hearing, the trial court advised Singleton of the terms of his probation. Included was a provision that Singleton not have contact with a person under age eighteen. Defense counsel interposed: "I'm wondering if you would consider modifying any of the conditions of probation relating to minors under the age of 18 to not apply as to his son" and observed that Singleton could possibly be released before his son turned eighteen. (Tr. 825.) The trial court replied: "These conditions won't start until he's released from custody" and "I'm not going to do that today." (Tr. 825.)

[21] Singleton interprets the trial court's deferment of the motion to modify a probationary term until his release to constitute a prohibition against any form of contact with his minor son during his incarceration. We do not agree that this is the import of the trial court's language.

[22] First, we observe that defense counsel asked the trial court to modify a probationary term. The request did not concern a no-contact order pursuant to

Indiana Code section 35-38-1-30 – a statute which provides that a court may impose a no-contact order as a condition of an executed sentence.

[23] Second, the trial court was not asked to clarify what parental rights, if any, Singleton would exercise during his incarceration. From the argument presented at sentencing, it appears that Singleton's marriage remains intact and his wife is willing to facilitate Singleton's contact with his son. Absent a court order to the contrary, it is within the prerogative of a custodial parent to determine the extent of his or her child's contact with other individuals. *See In re K.I.*, 903 N.E.2d 453, 462 (Ind. 2009) (recognizing that a parent has a fundamental right to control the upbringing, education, and religious training of his or her child).

# Conclusion

[24] Singleton's convictions are affirmed. His sentence is revised to twenty years.

[25] Affirmed in part; reversed in part.

Robb, J., and Brown, J., concur.