## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Victoria L. Bailey
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana
Indianapolis, Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darnell Wilson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | February 1, 2016<br><br>Court of Appeals Case No.<br>49A02-1504-CR-216<br><br>Appeal from the Marion Superior Court, Criminal Division, Room 3<br><br>The Honorable Stanley Kroh, Magistrate<br><br>Trial Court Cause No.<br>49G03-1405-FB-28371 |

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, Darnell Wilson was convicted of Aggravated Battery, a Class B felony.[1] The trial court subsequently determined Wilson to be a Habitual Offender. On appeal, Wilson presents one issue for our review: Did the trial court abuse its discretion in denying his motion for a mistrial based on prosecutorial misconduct?

[2] We affirm.

## Facts & Procedural History

[3] An ongoing dispute between two family groups underscores the events giving rise to Wilson's conviction. On May 26, 2014, the Memorial Day holiday, Veronica Alexander and her partner, Anthony Moffitt, along with their family and a few friends, were having a cookout at their home on North Grant Street in Indianapolis. James Currin and his partner, Shante Bowie, and their five children were driving down Grant Street in a gray minivan. According to Alexander, Currin and Bowie were driving up and down the street "taunting" and "threatening" Alexander's and Moffitt's children. *Transcript* at 27. Bowie claimed that she and Currin were going to visit a friend who lived on Grant Street. When Currin came to a stop sign near Alexander's home, Moffitt approached the vehicle and started shouting for Currin to get out.

---

[1] Ind. Code § 35-42-2-1.5(2). Effective July 1, 2014, this offense was reclassified as a Level 3 felony. Because Wilson committed this offense prior to that date, it retains its prior classification as a Class B felony.

[4] Currin got out of the car and told Bowie, "you just leave," "I'm about to whoop his ass." *Id.* at 166. Currin and Moffitt then began trading punches. Bowie moved into the driver's seat and as she turned the minivan around in a driveway, a window of the vehicle was broken out. Bowie then drove to her aunt's home located one block over on Chester Avenue. When Bowie arrived, she saw Wilson, who is her uncle, and asked him to head over to Grant Street to help Currin. She also called the police. Currin then came running between houses and across an alleyway and met up with Wilson. As they headed back to the Chester Avenue house, Alexander, Moffitt, and others followed. When police arrived, they spoke with Alexander and Bowie. The responding officers told the people from Grant Street to go back to Grant Street and told the people from Chester Avenue to stay on Chester Avenue. Alexander, Moffitt, and the others returned to the North Grant Street home.

[5] Shortly after the police left, Lamont Wilson, Vicky Brooks, and Shawn Bowie arrived at the Chester Avenue residence. Lamont spoke with those in the home, including Wilson, and told them, "I think we should go teach them a lesson." *Id.* at 173. A group of individuals, including Wilson, walked across the alley and through a field to the Grant Street residence. Brooks had armed herself with a knife and at some point, Lamont and Wilson armed themselves with large sticks or two-by-fours. As the group approached the Grant Street residence, they exchanged words with Moffitt and others. Wilson was positively identified as one of the individuals that entered onto the Grant Street property prior to the ensuing melee. During the confrontation, Moffitt was

struck with what appeared to be two-by-fours, punched, and stomped on after he fell to the ground. Wilson admitted to throwing a punch, but claimed he hit another individual involved in the altercation. Other witnesses identified Wilson as one of the individuals hitting, punching, and stomping on Moffitt. Alexander was also attacked and sustained knife wounds to her back, buttocks, upper legs, and arm.

[6] A neighbor who was present at the Grant Street home called 911 while other neighbors ran from their homes to try to stop the violence. Wilson and the rest withdrew to the Chester Avenue residence. Moffitt, Alexander, and another were taken to the hospital where they were treated for various injuries. Moffitt was hospitalized for multiple fractures in his face and jaw; he underwent surgery, and at the time of trial, was still suffering from the effects of the attack.

[7] On May 30, 2014, the State charged Wilson with aggravated battery as a Class B felony, and subsequently alleged him to be a habitual offender. A jury trial was held on March 5, 2015. During closing argument, the State focused primarily on Wilson's liability as an accomplice to beating Moffitt and that the severity of Moffitt's injuries qualified the offense as aggravated battery, not a lesser battery offense. The defense's closing argument sought to highlight inconsistencies in witnesses' testimonies and to paint those at the Grant Street residence, including Moffitt, as the aggressors. Defense counsel further argued, "[p]eople act consistent with their personalities. We know that [Moffitt's] personality is, he starts fights." *Transcript* at 302-03. Defense counsel suggested that Moffitt "lost a fight and now he's using the justice system to

punish everyone in that family because of that." *Id*. at 303. During rebuttal argument, the State addressed what the defense claimed were inconsistencies and the defense's argument that Moffitt instigated the fight by suggesting that defense counsel was "misstat[ing]" the evidence presented. *Id*. at 309. Defense counsel objected and the following ensued:

> [DEFENSE COUNSEL]: Counsel, that is an improper argument. To accuse counsel of misstating - -
>
> [DEPUTY PROSECUTOR]: I didn't say intentionally, Your Honor.
>
> THE COURT: All right. And ladies and gentlemen, again, remember the instruction that you're given. What the lawyers say during closing argument or opening statement, it's not evidence. They are allowed to discuss the evidence and the law and attempt to persuade you to a particular verdict. You can accept or reject those arguments as you see fit.
>
> If you'll continue.
>
> [DEPUTY PROSECUTOR]: Thank you, Judge.
>
> I am not saying he did this intentionally. I'm saying if he's misstating the facts, though, as they came out from the witness stand, which is what counts, how can you believe any of the argument that he's made.
>
> [DEFENSE COUNSEL]: Again - - I'm sorry, Judge. Can we approach?

THE COURT: Well, I - - the Court would sustain the objection and - -

[DEFENSE COUNSEL]: Then I move for a mistrial.

THE COURT: All right. Well, the Court would deny the request for mistrial.

And, again, ladies and gentlemen, when the lawyers are arguing the case, your recollection of the evidence is what is important here. The evidence came from the witness stand, the sworn testimony.

You know, the burden is with the State of Indiana and what the lawyers say is not evidence. You can accept or reject the arguments as you see fit.

*Id.* at 309-10.

[8] The jury ultimately found Wilson guilty of aggravated battery. Wilson waived his right to a jury trial on the habitual offender count, and the trial court heard evidence and took the matter under advisement. On March 20, 2015, the trial court found Wilson to be a habitual offender and sentenced him to an aggregate term of sixteen years.

## Discussion & Decision

[9] Wilson argues that the trial court abused its discretion in denying his motion for mistrial made during closing argument. Wilson maintains that the deputy prosecutor's suggestion that his defense counsel misstated the evidence

amounted to prosecutorial misconduct. Because credibility of the witnesses, including himself, and by extension his attorney, was key, Wilson asserts that the deputy prosecutor's statements placed him in a position of grave peril.

[10] We begin by noting that a trial court's decision to grant or deny a motion for mistrial is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. *Mickens v. State,* 742 N.E.2d 927, 929 (Ind. 2001). A court on appeal therefore reviews the trial court's decision solely for an abuse of discretion. *Id.* "After all, a mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation." *Id.*

[11] When a mistrial request is based on a properly-preserved claim of prosecutorial misconduct, the defendant must establish (1) that the prosecutor engaged in misconduct and (2) that the questioned conduct was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is determined by considering the alleged misconduct's probable persuasive effect on the jury's decision, not the impropriety of the conduct. *Id.*

[12] When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. *Dumas v. State,* 803 N.E.2d 1113, 1117 (Ind. 2004); *Brewer v. State,* 605 N.E.2d 181, 182 (Ind. 1993). If the party is not satisfied with the admonishment, then he or she should move

for mistrial. *Dumas,* 803 N.E.2d at 1117; *see also Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014).

[13] Here, we need not determine whether the deputy prosecutor's statements amounted to misconduct because such statements, which were defused by the trial court's admonishment, did not place Wilson in a position of grave peril to which he would not otherwise have been subjected. During Wilson's closing argument, defense counsel suggested that Moffitt, and by extension, the deputy prosecutor, were abusing the justice system to "punish" Wilson and everyone else in his family[2] and further characterized Moffitt as the instigator. *Transcript* at 303. Defense counsel also outlined perceived inconsistencies in the testimony of the various witnesses. The deputy prosecutor responded to such arguments, characterizing defense counsel's perceived inconsistencies as misstatements of the record.[3]

[14] Upon defense counsel's objection, the trial court immediately advised the jury that the statements during the closing arguments for both sides were not

---

[2] It should be noted that improper argument is a two-way street. We agree with the State that an inference could be drawn from defense counsel's statements that Moffitt, and by extension the prosecutor, were attempting to "pervert the course of justice" for personal reasons. *Appellee's Brief* at 14. To this end, defense counsel's argument was much closer to the line of misconduct than the deputy prosecutor's comments. *See generally* Ind. R. Prof. Cond., Preamble ¶ 5 ("A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including . . . other lawyers").

[3] "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006). Here, the deputy prosecutor's remarks were made during the rebuttal phase of closing arguments and in direct response to the contentious argument made by defense counsel.

evidence. The court reiterated to the jury that it could accept or reject the arguments "as you see fit." *Id.* at 309. Upon denying defense counsel's subsequent request for a mistrial, the trial court again admonished the jury that it was to consider its recollection of the evidence and not the arguments made by the attorneys. In closing, the deputy prosecutor even stated: "And I want to make it clear, folks, I'm not implying that anyone is doing anything nefarious here at all. I'm just saying the facts are what is [sic] the key." *Id.* at 311. Having reviewed the entire record, it is unlikely that the jury was persuaded by the challenged comments and ignored its duty to independently examine and rely upon the evidence as it was presented.

[15] Moreover, we note that the court admonished the jury as to its role as the factfinder and reiterated the State's burden. Repeated admonishments are presumed to have cured any error that may have occurred. *See Emerson v. State*, 952 N.E.2d 832, 840 (Ind. Ct. App. 2011), *trans. denied*. Wilson does not dispute the accuracy of the admonishment and has not offered any argument to rebut the presumption that the admonishment cured the error.

[16] The trial court did not abuse its discretion in denying Wilson's motion for mistrial.

Judgment affirmed.

Robb, J., and Barnes, J. concur.