## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Ernest P. Galos
Public Defender
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Herbert Lee Brown, III, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 14, 2016 <br><br> Court of Appeals Case No. <br> 71A04-1603-CR-675 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable John M. Marnocha, Judge <br><br> Trial Court Cause No. <br> 71D02-1501-F1-2 |

**Baker, Judge.**

[1]     Herbert Brown appeals his convictions for two counts of Level 1 Felony Rape[1] and two counts of Level 3 Felony Robbery.[2] Brown raises the following arguments on appeal: (1) the trial court erred by excluding evidence of the victim's other sexual conduct; (2) the trial court erred by denying a mistrial; (3) there is insufficient evidence supporting the rape convictions; and (4) the aggregate sentence is inappropriate in light of the nature of the offenses and his character. Finding no error and finding that the sentence is not inappropriate, we affirm.

# Facts

[2]     Around 3:40 a.m. on January 1, 2015, Brown went to a 7-Eleven in South Bend. The two clerks working that morning were Debra Pushee and Marcus Kraskowski. After Pushee sold a customer a pack of cigarettes, Brown tried to steal them. When the customer refused to give Brown the cigarettes, Brown pulled a handgun, pointed it at Pushee, and said, "Give me the money." Tr. p. 58. Pushee stood back from the register and allowed him to take the money inside of it. Pushee thought that Brown was going to kill her and Kraskowski. Brown then held his gun to Kraskowski's chest, head, and neck, and demanded that he open the register in front of him. Kraskowski complied, and Brown took the money from inside of that register as well. Brown walked to the front

---

[1] Ind. Code § 35-42-4-1.

[2] I.C. § 35-42-5-1.

door of the store, saw that his ride had left, and returned to the clerks, demanding that they empty their pockets. He took Kraskowski's wallet and then exited the store.

[3] A minivan was parked outside of the 7-Eleven. Brown opened the door on the driver's side of the vehicle and got in. C.J., whose boyfriend was inside the store, was resting in the passenger's seat. When the door opened, she thought it was her boyfriend, but when she opened her eyes and saw Brown, who she did not know, she said, "Wait, dude, you're in the wrong car." *Id.* at 123. Brown told her to "shut up" and pointed his gun at her. *Id.* He drove away and eventually pulled the vehicle over and stopped.

[4] Brown asked C.J. to give him oral sex. She did not want to, but she did not believe that she had any options "because he had that gun." *Id.* at 126. She urinated on herself. She performed oral sex on Brown, but he did not ejaculate. He told her that she was doing it wrong and ordered her to go to the back of the van and remove her pants. She complied. He followed and inserted his penis into her vagina. He still did not ejaculate, and demanded that she again perform oral sex. As she was performing oral sex a second time, he urinated in her mouth. She spit it out and wiped it up with her shirt. Brown wiped down everything in the vehicle that he had touched. C.J. asked him to take her back to the 7-Eleven, where her boyfriend was probably waiting for her. Brown eventually stopped the van and told C.J. to turn her head. She "thought he was going to shoot [her] in the back of [her] head." *Id.* at 131. He exited the van, and she then jumped into the driver's seat and drove away.

[5] On January 16, 2015, the State charged Brown with three counts of rape, four counts of robbery, and one count of criminal confinement. The State later dismissed two counts of robbery and the criminal confinement charge. Prior to trial, the State filed a motion in limine to exclude evidence of C.J.'s prior sexual history. The trial court granted the motion in part, excluding evidence from C.J.'s thigh swab revealing the presence of DNA that was not Brown's.

[6] Brown's jury trial began on January 19, 2016. During preliminary jury instructions, the trial court cautioned the jury that the "fact that charges have been filed and the defendant arrested and brought to trial, is not to be considered by you as any evidence of guilt. The charging information is not evidence." *Id.* at 19-20. Then, the court realized that the packet provided to the jury mistakenly included the original charge of criminal confinement that had been dismissed. The trial court told the jury that "page three of this next instruction wasn't in any of our instructions, but it is[,] for some reason, in yours," explaining that it was a scrivener's error and asking the jurors to rip out page three. *Id.* at 21-22. After the jurors had removed page three, the trial court said, "[t]hat's something from some other case that was left over, that wasn't for some reason taken out of the ones that you have." *Id.* at 22.

[7] The trial court started reading the charges, found a numbering error, and decided to take a recess to collect the instructions and start over. At that point, Brown's attorney requested a sidebar and asked for a mistrial. The trial court denied the motion. Next, the trial court asked of the jurors, "[d]oes anyone think that based upon what I've said, that they couldn't continue to be a fair

juror in this case?" *Id.* at 27. The jurors all answered no. After a recess, the trial court called the jury back in and again explained that the original "instructions . . . had a count in it, in which Mr. Brown was not at all charged with." *Id.* at 33. The trial court asked again, "is there anything about that, that you think . . . would cause you not to be able to continue to be a fair and impartial juror and judge this case based upon the law and the facts that [are] presented to you during this trial?" *Id.* The jurors all said no, and the trial court then read the instructions again from the beginning, including the instruction stating that the charging information is not to be considered as evidence of guilt.

[8] Brown testified at the trial, admitting that he had a gun with him and that he had sex with C.J. but insisting that it was consensual. C.J. also testified, as did the 7-Eleven clerks, a police officer, and the nurse who examined C.J. following the assault.

[9] On January 21, 2016, the jury found Brown guilty of two counts of Level 1 felony rape and two counts of Level 3 felony robbery. Brown's sentencing hearing took place on February 24, 2016. As aggravators for the robberies, the trial court found that there were multiple victims and that Brown was on probation for assisting a criminal in murder when he committed the offenses in this case. As aggravators for the rapes, the trial court found that there were multiple acts, that Brown was on probation, and that the nature and circumstances of the offense were egregious, including the fact that he had urinated in C.J.'s mouth. The trial court did not find any mitigators. The trial

court imposed concurrent terms of forty years for each of the two rape convictions, to be served consecutively to concurrent terms of sixteen years for each of the two robbery convictions, for an aggregate sentence of fifty-six years imprisonment. Brown now appeals.

# Discussion and Decision

# I. Evidence of C.J.'s Prior Sexual History

[10] Brown first argues that the trial court erred by excluding evidence of C.J.'s prior sexual history. The admission and exclusion of evidence falls within the trial court's sound discretion, and we will reverse only if the decision is clearly against the logic and effect of the facts and circumstances before it. *Johnson v. State*, 6 N.E.3d 491, 498 (Ind. Ct. App. 2014).

[11] The trial court excluded the evidence of the DNA in C.J.'s thigh swab under Indiana Evidence Rule 412, which provides, in relevant part, as follows:

> (a)    Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> > (1)    evidence offered to prove that a victim or witness engaged in other sexual behavior; or
> >
> > (2)    evidence offered to prove a victim's or witness's sexual predisposition.
>
> (b)    Exceptions.
>
> > (1)    *Criminal Cases.* The court may admit the following evidence in a criminal case:

> (A)   evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;
>
> (B)   evidence of specific instances of a victim's or witness's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and
>
> (C)   evidence whose exclusion would violate the defendant's constitutional rights.
>
> ***
>
> (c)   Procedure to Determine Admissibility.
>
> (1)   *Motion*. If a party intends to offer evidence under Rule 412(b), the party must:
>
> > (A)   file a motion that specifically describes the evidence and states the purpose for which it is to be offered;
> >
> > (B)   do so at least ten (10) days before trial unless the court, for good cause, sets a different time;
> >
> > (C)   serve the motion on all parties; and
> >
> > (D)   notify the victim or, when appropriate, the victim's guardian or representative.
>
> (2)   *Hearing.* Before admitting evidence under this rule, the court must conduct an *in camera* hearing and give the victim and parties a right to attend and be heard.  Unless the court orders otherwise, the motion, related materials, and the record of the

> hearing is confidential and excluded from public access in accordance with Administrative Rule 9.

In this case, the evidence excluded by the trial court was offered to prove that C.J. had engaged in other sexual behavior on the night in question; therefore, it was prohibited by Evidence Rule 412(a). Initially, we note that Brown did not comply with Rule 412(c)—he did not file a motion seeking to have the evidence admitted. Consequently, regardless of the substance of the evidence, he was not entitled to its admission.[3]

[12] Lack of a motion notwithstanding, we will briefly address the substance of the issue. The only way the evidence in question would be admissible is if it fell under an exception to the general prohibition.

- The first exception—evidence of specific instances of C.J.'s sexual behavior, offered to prove that someone other than Brown was the source of semen or other physical evidence—does not apply because Brown admitted that he did, in fact, have sex with C.J. on the night in question. The only contested issue was consent, not the identity of the person providing the semen in the van and semen and/or urine on C.J.'s shirt.

- The second exception—evidence of specific instances of C.J.'s sexual behavior *with respect to Brown*, if offered by Brown to prove consent—does not apply because the evidence relates to C.J.'s sexual behavior with other individuals, not with Brown, and in no way tends to prove consent.

---

[3] Brown has also waived this argument because he failed to argue to the trial court that the evidence fell within any of the Rule 412 exceptions. Waiver notwithstanding, we will address the issue.

- The final exception—evidence whose exclusion would violate Brown's constitutional rights—does not apply. Brown argues that excluding the evidence denied him a fair trial because he could not impeach C.J.'s version of the events on the night in question. Brown had assumed that C.J. would testify that she had not had sex with anyone before he raped her, and that he would then impeach her with the thigh swab evidence. But she did not testify about her sexual behavior before the rape, so there was no testimony for him to impeach.

In sum, the evidence was clearly prohibited and did not fall under any of the delineated exceptions to the general rule. Therefore, the trial court did not err by excluding it.

# II. Mistrial

Next, Brown argues that the trial court erred by denying his motion for a mistrial when the dismissed criminal confinement charge was mistakenly included in the instructions provided to the jury before trial began. A mistrial is an extreme remedy that is only justified when other measures are insufficient to rectify the situation. *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001). Brown has the burden of establishing that the questioned conduct was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Id.*

In this case, as soon as the trial court realized that the dismissed charge was included in the jurors' packets, it asked the jurors to remove the page and explained that it contained a scrivener's error. The trial court stated that it was "something from some other case that was left over," and not related to Brown's case. Tr. p. 22. The trial court asked of the jurors, "[d]oes anyone

think that based upon what I've said, that they couldn't continue to be a fair juror in this case?" *Id.* at 27. The jurors all answered no. After a recess, the trial court again emphasized that the jurors had mistakenly been provided with a count that Brown had not been charged with, and asked again, "is there anything about that, that you think . . . would cause you to not be able to continue to be a fair and impartial juror and judge this case based upon the law and the facts that [are] presented to you during this trial?" *Id.* at 33. The jurors again all answered no. When the trial court re-read the instructions from the beginning, it again emphasized that criminal charges are not to be considered as evidence of guilt.

[15] Initially, we note that we must presume that jurors follow a trial court's instructions and admonishments. *Isom v. State*, 31 N.E.3d 469, 481 (Ind. 2015); *see also Lucio v. State*, 907 N.E.2d 1008, 1010-11 (Ind. 2009) (emphasizing the "strong presumptions that juries follow courts' instructions and that an admonition cures any error"). We find this Court's opinion in *Strowmatt v. State* to be instructive. 686 N.E.2d 154 (Ind. Ct. App. 1997). In *Strowmatt*, the judge began reading the wrong child molesting charge, with a different victim's name, during voir dire. The judge twice apologized to the potential jurors and explained that he had misread the charge. He asked if the misreading was a problem, and none of the jurors responded. The defendant moved for a mistrial, which the trial court denied, and this Court affirmed. We found that the trial court had eliminated any possible prejudice by asking the jurors if they

could be fair, emphasizing that the misreading occurred before trial and that the wrong charge was not admitted into evidence. *Id.* at 157.

[16] In this case, as in *Strowmatt*, the trial court explained what had happened to the jury more than once. The trial court also asked, twice, whether the jurors would have difficulty being fair and impartial as a result, and all of the jurors said no. Furthermore, the instructions cautioned the jurors that, in any event, criminal charges are not to be considered as evidence of the defendant's guilt. Given all of these facts, and given that this sequence of events occurred before the trial began and the wrong charge was not entered into evidence, we find no error in the trial court's denial of the motion for a mistrial.

# III. Sufficiency

[17] Brown argues that there is insufficient evidence supporting his two rape convictions.[4] When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm if, based on the evidence and inferences, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

---

[4] He does not make a sufficiency argument with respect to his robbery convictions.

[18] To convict Brown of the two charged counts of Level 1 felony rape, the State was required to prove the following beyond a reasonable doubt: (1) Brown compelled C.J. by force or imminent threat of force to perform oral sex on him while he was armed with a deadly weapon; and (2) Brown compelled C.J. by force or imminent threat of force to have sexual intercourse with him while he was armed with a deadly weapon. I.C. § 35-42-4-1.

[19] In this case, C.J. testified that Brown forced her to perform oral sex on him and to have sexual intercourse with him while he was armed with a gun. She was scared and believed she had to comply because of the weapon. She testified at length and with specificity. Her uncorroborated testimony, alone, is sufficient evidence to support the rape convictions. *Carter v. State*, 44 N.E.3d 47, 54 (Ind. Ct. App. 2015). And in this case, her testimony was not uncorroborated. Pushee, Kraskowski, and another individual testified that after Brown left 7-Eleven he got into a van. The nurse who examined C.J. and two police officers who interviewed C.J. corroborated the details of the rapes that she provided in her testimony. Finally, Brown himself corroborated much of C.J.'s testimony, admitting that he was armed and that they had oral sex and intercourse in her van. This evidence is more than sufficient to support the rape convictions, and his arguments to the contrary amount to requests that we reweigh evidence and assess witness credibility—requests we decline.

# IV. Appropriateness

[20]  Finally, Brown argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[21]  Brown was convicted of two Level 1 felonies and two Level 3 felonies. For the Level 1 felonies, Brown faced a sentence of twenty to forty years, with an advisory term of thirty years. Ind. Code § 35-50-2-4(b). He received concurrent forty-year terms for the Level 1 felony convictions. For the Level 3 felonies, Brown faced a sentence of three to sixteen years, with an advisory term of nine years. I.C. § 35-50-2-5(b). He received concurrent sixteen-year terms for the Level 3 felony convictions. While Brown received the maximum terms for each of his four convictions, because the trial court elected to order that the two Level 1 terms be served concurrently and the two Level 3 terms be served concurrently, his aggregate sentence was 56 years rather than the maximum possible aggregate term of 112 years.

[22] As for the nature of the robberies, the record reveals that Brown's crimes were premeditated. He visited the 7-Eleven at the same time every day for a week, scoping the store out. He showed up on the night he robbed the store wearing just one glove that covered the tattoo on his hand, and a hooded sweatshirt, in a failed attempt to hide his face. He robbed the two clerks twice, first taking the money from their registers at gunpoint, then walking away to the front door, and then returning and ordering them to empty their pockets.

[23] As for the nature of the rapes, he hijacked a vehicle with a passenger inside. He ordered C.J. to shut up, pointing his gun at her, and drove her to another location. He forced C.J. to perform oral sex on him twice and forced her to engage in sexual intercourse. C.J. was so scared that she urinated on herself. When Brown was unable to ejaculate, he urinated in C.J.'s mouth.[5] She was terrified and believed that he was going to kill her. We do not find that the nature of these offenses aids Brown's sentencing argument.

[24] As for Brown's character, we note that at the time he committed these crimes, he was only twenty years old. At that young age, he had been adjudicated delinquent for an alcohol violation and possessing marijuana. He was put on probation for the latter adjudication and violated it for receiving three school suspensions. In his brief adulthood, he was convicted of class C felony assisting

---

[5] To the extent that Brown appears to argue that the trial court abused its discretion in finding this to be an aggravator, we note that he attempts to raise it in the context of the Rule 7(B) analysis, which is not permitted. Because he has failed to conduct an abuse of discretion analysis, he has waived this issue. However, even if he had raised it properly, we would have reached the same result.

a criminal in murder. He was still on probation for that offense when he committed his most recent crimes. It is readily apparent that Brown is either unable or unwilling to comply with the rules of society. It is likewise apparent that he has little respect for his fellow citizens. In sum, we do not find the aggregate fifty-six-year sentence to be inappropriate in light of the nature of the offenses and Brown's character.

[25] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.