## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 02 2019, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah B. Markisohn
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin Ladell Robinson, *Appellant-Defendant,* | May 2, 2019 |
| | Court of Appeals Case No. 18A-CR-1606 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Peggy R. Hart, Magistrate |
| | Trial Court Cause No. 49G05-1610-F3-39569 |

**Bailey, Judge.**

# Case Summary

Kevin Ladell Robinson ("Robinson") appeals his convictions of two counts of Criminal Confinement, as Level 3 felonies.[1] He presents the sole issue of whether he was entitled to a mistrial on grounds that potential jurors saw him in circumstances suggesting he was in law enforcement custody, thereby undermining the presumption of innocence. We affirm.

# Facts and Procedural History

On October 4, 2016, friends Sarah Ferguson ("Ferguson") and Cherith Hadnott ("Hadnott") encountered Robinson at the Indianapolis home of Robinson's brother. Robinson, Ferguson, and Hadnott decided to leave together to run errands, obtain food, and rent a hotel room. There was some discussion of Robinson and Hadnott planning to engage in sexual activity at the hotel room.

Robinson rented a hotel room and there the trio used some drugs that Robinson had supplied. They left several times for various errands and Robinson provided transportation to Hadnott for a pre-arranged sexual encounter. Upon return to the hotel room, Hadnott took a shower and dressed. Robinson then indicated that he wanted to have sex with Hadnott and insisted that he would

---

[1] Ind. Code § 35-42-3-3.

not have paid for food and the hotel room without that expectation. Hadnott refused Robinson's overtures and the interaction deteriorated.

[4] Robinson called both women names, took possession of Hadnott's cell phone, held a gun to her head, and "snatched" money from her hands. (Tr. Vol. II, pg. 159.) Hadnott attempted to grab her shoes and run from the room, but Robinson caught her, slammed her onto one of the beds, and choked her until she became "dizzy and light-headed." *Id.* at 161. Robinson released his grip on Hadnott, but their verbal argument continued for hours.

[5] Robinson insisted that the women "had to make his money back and then he would let [them] go." *Id.* at 110. Ferguson convinced Robinson to let her have Hadnott's cell phone so that she could post an online advertisement for prostitution. Once she had control of the cell phone, Ferguson sent a text message to Tracy McDaniel ("McDaniel"), a social worker who had assisted Ferguson in the past. Ferguson provided McDaniel with the hotel location and room number and McDaniel contacted police. Detective Brian Durham of the Indianapolis Metropolitan Police Department ("Det. Durham") participated in a plan to remove Ferguson and Hadnott safely. That is, he would pose as a prostitution customer and request a "two-girl special" so that both would leave the hotel room at once. *Id.* at 114.

[6] Ferguson advised Robinson that she had obtained a customer for herself and Hadnott, and Robinson responded that he "wanted his money" and "was ready to go." *Id.* at 115. Hadnott, unaware of the plan, refused to cooperate, and

Robinson struck her. Eventually, all three left the hotel room for the ostensible purpose of meeting the customer. Robinson was immediately arrested.

[7] The State charged Robinson with robbery, strangulation, and two counts of criminal confinement. His jury trial commenced on May 17, 2018. Following a discussion on preliminary matters, the trial court recessed the proceedings to conduct an initial hearing for an unrelated defendant. After that initial hearing, potential jurors were invited into the courtroom for voir dire. As the potential jurors were searching for seats, Deputy Christine Bowling ("Deputy Bowling") opened a door and began to proceed into the courtroom with Robinson behind her. Seeing that the courtroom was occupied, the deputy "slowly backed up" and Robinson was "pulled back." *Id.* at 50, 55.

[8] From his seat inside the courtroom, defense counsel could see Robinson and understand that he had been ordered to back up. Explaining that he felt the first fourteen potential jurors shared that vantage point, defense counsel asked for the dismissal of the first panel. The trial court took the motion under advisement and instructed the attorneys, deputies, and bailiffs to use the door in question to avoid the impression that it was exclusively used to transport persons in custody. After the jury was impaneled and recessed for lunch, the trial court conducted a bench conference at which Robinson requested a mistrial. Deputy Bowling provided her recollection of the aborted courtroom entry, the State and Robinson presented arguments, and the trial court denied the motion for a mistrial. The trial culminated with the jury acquitting

Robinson of robbery and strangulation but convicting him of two counts of criminal confinement.

[9] On June 12, 2018, Robinson received two concurrent sentences of fourteen years imprisonment. He now appeals.

# Discussion and Decision

[10] A mistrial is an extreme remedy appropriate only when other remedial measures are insufficient to rectify the situation. *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001). A trial judge has discretion in determining whether to grant a mistrial and his or her decision is afforded great deference because the trial judge "'is in the best position to gauge the surrounding circumstances of an event and its impact on the jury.'" *Id.* (quoting *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989)). To prevail on appeal from the denial of a motion for mistrial, an appellant must establish that the questioned conduct "'was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected.'" The gravity of the peril is determined by consideration of the misconduct's probable persuasive effect on the jury's decision, rather than the impropriety of the conduct. *Id.*

[11] Robinson contends that the State inadvertently allowed the jurors to have an impression that he was in custody while awaiting trial, thereby undermining the presumption of his innocence. A defendant is entitled to a presumption of innocence and thus, "requiring a defendant to appear in jail garb has long been

held to deny due process." *Stephenson v. State*, 864 N.E.2d 1022, 1029 (Ind. 2007). Also, the routine use of visible shackles during the guilt phase of trial is forbidden by the Fifth and Fourteenth Amendments to the United States Constitution. *Deck v. Missouri*, 544 U.S. 622, 629 (2005). But our Indiana Supreme Court found that the denial of a mistrial was not erroneous where three jurors had observed a handcuffed defendant being transported from the courtroom to the jail and the jurors had provided assurances that they would not be adversely affected by the viewing. *Bailey v. State*, 519 N.E.2d 1238, 1240 (Ind. 1988). And in *Misenheimer v. State*, 374 N.E.2d 523 (Ind. 1978), the Court considered circumstances where an entire jury waiting in the hallway had inadvertently seen the defendant being taken through a barred door from a lock-up area. The Court concluded: "[s]uch an inadvertent incident is not so prejudicial as to require a mistrial." *Id.* at 529.

[12] Here, Deputy Bowling was placed under oath and was examined as follows:

> Defense Counsel: Deputy, you were given the job of bringing the defendant, Kevin Robinson, out to the courtroom this morning; is that correct?
>
> Deputy Bowling: Correct.
>
> Defense Counsel: Okay. And you didn't realize the jury was coming in when you brought – when you started to bring Mr. Robinson into the courtroom, is that –
>
> Deputy Bowling: Correct.

Defense Counsel:  So can you describe for the Court, in your own words, what happened when you opened that door into the courtroom?

Deputy Bowling:  Okay.  He was standing behind me, I was going to come in, give him his belt, which was on that file [cabinet] over there, and once I initially opened the door and I saw the jurors filing in, I said oh no, and I just slowly backed up. Mr. – he was behind me the whole time. … I told Mr. Robinson to stand against the wall.  I reopened the door just a little bit and I snuck my hand around and grabbed the belt[.]

(Tr. Vol. II, pgs. 54-55.)  Other testimony established that Robinson was in street clothing and not wearing handcuffs.  He was not standing in the holding area and the holding area door was closed.  At the time, it appeared to Deputy Bowling that the potential jurors were searching for their seats.

[13]  The trial court articulated the circumstances surrounding the event as follows:

The Court has found that for whatever reason the defendant was escorted out of this courtroom, the jurors were brought in, and when the deputy was trying to bring him back, she had observed that and shut the door.  But I think that we all agree the evidence is clear and the Court is a witness to this as – myself is that the defendant is in street clothes, nice street clothes.  He's – was never in a jumpsuit.  Also, I think from the evidence we've heard that the --- the holding cell happens to be behind – located behind that door.  However, it was closed.  So the defendant was just standing on the blue carpeting and I think that there was ample evidence and – the proffers here made today that the carpeting [sic] hallway, if you will, is pretty much accessible to everybody who kind of works in this criminal justice system.

*Id.* at 64-65. Whether any of the jurors were aware of the event was not established. At most, the record reveals that jurors may have been inadvertently exposed to a brief view of Robinson in circumstances suggesting that he was in custody. The trial court did not abuse its discretion in finding the event not to be sufficiently prejudicial to require a mistrial.

# Conclusion

[14] Robinson has not demonstrated his entitlement to a mistrial.

[15] Affirmed.

Riley, J., and Pyle, J., concur.